IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MATTHEW DIETZ | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 10-1674 |
| | ) | |
| COUNTY OF ALLEGHENY, *et al.*, | ) | Judge Cathy Bissoon |
| | ) | |
| Defendants. | ) | |
| | ) | |

**MEMORANDUM AND ORDER**

**I.     MEMORANDUM**

Pending before the Court are Defendants County of Allegheny and Ramon C. Rustin's Motion for Summary Judgment (Doc. 64), and Defendant Allegheny Correctional Health Services, Inc.'s Motion for Summary Judgment (Doc. 68).  For the reasons stated herein, the Court will grant both motions.

**BACKGROUND**

   **A.  Factual Background**

Plaintiff Matthew Dietz alleges that, during his three-day stay at Allegheny County Jail ("ACJ"), Defendants County of Allegheny, Ramon C. Rustin, and Allegheny Correctional Health Services ("ACHS") violated his substantive due process rights guaranteed by the Fourteenth Amendment to the United States Constitution by failing to implement proper policies regarding medical care for diabetic inmates.

Plaintiff is an insulin-dependent diabetic who uses an insulin pump to administer insulin. He was transferred, as a pretrial detainee, from Westmoreland County Prison to ACJ at 9:00 A.M. on March 10, 2009.  See Westmoreland County Prison Release Report (Doc. 77-1). Upon entry into ACJ, a correctional officer took away Plaintiff's insulin pump.  Insulin-

dependent diabetes may be treated with an insulin pump or insulin injections, and there is no evidence in this case of a medical benefit of using an insulin pump instead of insulin injections. ACHS Facts ¶ 24; Pl.'s Response to ACHS Facts ¶ 24.

Plaintiff was then placed in a holding cell and was given a meal that was not specially prepared for diabetics. A special diet is important for diabetics in order to avoid high blood sugar. Aiken Dep. 22:25-23:13 (Doc. 72). For a diabetic inmate to get special meals at ACJ, ACHS must request such meals for the inmate.

On March 11, 2009, at 1:39 P.M., Plaintiff met with medical staff from ACHS. Plaintiff asserts that he was not given insulin until sometime on March 11, 2009, at least eighteen hours after he was placed in the holding cell.

On March 12, 2009, Plaintiff met with an ACHS physician for the first time during his stay at ACJ. At 12:18 P.M. on March 12, 2009, Plaintiff was admitted to the ACJ infirmary. Also on March 12, 2009, ACHS requested special meals for Plaintiff.

ACHS Nursing Protocols for care of diabetics, in place during Plaintiff's stay at ACJ instruct nurses to instruct patients to "[e]at the diet prescribed by the physician and avoid commissary snacks." ACHS Nursing Protocols for Diabetes Mellitus ¶ E.1.a (Doc. 64-4 at 3). The Protocols also instruct nurses to "[m]ake appointment for the patient to see the physician or practitioner within 2 days of entering the facility," id. at ¶ E.2, and to "[c]onfirm medications and dosages and notify physician or practitioner for medication and diet orders," id. at ¶ E.3.

**B. Procedural Background**

Plaintiff brought this action asserting various causes of action against various defendants. Following this Court's ruling on a motion to dismiss and stipulated dismissals, the only remaining claims are under 42 U.S.C. § 1983, against Defendants County of Allegheny, Rustin, and ACHS, for alleged violations of Plaintiff's substantive due process rights guaranteed by the

Fourteenth Amendment to the United States Constitution. Specifically, Plaintiff alleges that Defendants failed to implement proper policies for providing insulin and special meals for diabetic inmates, and that Defendant ACHS failed to implement policies preventing novice medical personnel from learning proper IV techniques by practicing on inmates in emergency situations. Defendants move for summary judgment on all of Plaintiff's claims.

## ANALYSIS

As an initial matter, the Court notes that the parties' briefing in this case has been less than impressive, creating unnecessary additional work for the Court. Defendants Allegheny County and Rustin repeated many arguments that already were addressed in their motion to dismiss, making their positions on summary judgment unclear. Large portions of Defendants Allegheny County and Rustin's brief appear to be copied identically from their brief in support of their motion to dismiss. For example, Defendants Allegheny County and Rustin devote nearly five pages of their brief arguing that Plaintiff "fails to state a claim" against Defendant Rustin for lack of personal involvement, while acknowledging that the Court already determined that Plaintiff's claims against Rustin could proceed based on his role as final policymaker. County Br. 2-6 (Doc. 65). Defendants Allegheny County and Rustin moved for summary judgment as to all of Plaintiff's claims, but did not even bother to address Plaintiff's primary theories – that Defendants' policy failures caused a delay in Plaintiff receiving necessary insulin and special meals – until prompted to do so by the Court. See Text Order, July 18, 2012.

Defendant ACHS asserts that Plaintiff testified that he "received continuous diabetes care from the time he was admitted into the Allegheny County Jail on March 10, 2009 until he was released on March 13, 2009," ACHS Br. 6 (Doc. 70), but Plaintiff testified that he did not receive insulin for at least eighteen hours after arriving at ACJ. Dietz Dep. 52:6-52:21 (Doc. 71-1). Defendant ACHS also relies upon medical records to support its assertion that Plaintiff received

3

insulin on March 10, 2009, but has provided no evidence as to the interpretation of the records. The Court cannot simply accept as true counsel's assertions that the medical records demonstrate Plaintiff received insulin on March 10, 2009. Contrary to the popular lawyer's adage, some documents do not "speak for themselves."

Despite the fact that Plaintiff's case with respect to special meals hinges on whether Defendants' policies or customs caused a two-day delay in special meals being ordered for Plaintiff, Defendant ACHS simply asserts that it cannot be liable because the special meals eventually were ordered, and denies as immaterial all facts related to ACHS's policies regarding ordering a special diet for diabetics. ACHS Br. 9-10 (Doc. 70); ACHS Response to Pl.'s Facts ¶¶ 37-44 (Doc. 84).

Despite Defendants' ineptitude, Plaintiff has failed to present any evidence to suggest that the alleged harms he suffered were caused by Defendants' policies or customs. For the reasons stated herein, the Court, therefore, grants summary judgment in favor of Defendants.

### A. Legal Standards

1. Summary Judgment

Federal Rule of Civil Procedure 56 provides that summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial responsibility of identifying portions of the summary judgment record which it believes demonstrate the absence of a genuine dispute of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The moving party may discharge this burden by showing that there is an absence of evidence to support the nonmoving party's case. Id. at 325. To survive summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S.

574, 586 (1986).  The nonmoving party must show that there is a genuine dispute as to a material fact.  See id. at 587; Fed. R. Civ. P. 56(c).

    2.  <u>Substantive Due Process</u>

The Due Process Clause affords pretrial detainees the right to a policy ensuring adequate health care.  See <u>Manasco v. Rogers</u>, 337 F. App'x. 145, 150 (3d Cir. 2009) (citing <u>A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.</u>, 372 F.3d 572 (3d Cir. 2004)).  Under certain circumstances, lack of policy is the same as an affirmative policy.  See <u>A.M. ex rel. J.M.K.</u>, 372 F.3d at 583; <u>Natale v. Camden Cnty. Corr. Facility</u>, 318 F.3d 575, 583-85 (3d Cir. 2003).  Municipal liability may exist where a policymaker fails to establish a policy despite an obvious need to alter inadequate practices that are so likely to result in the violation of constitutional rights that the policymaker can reasonably be said to have been deliberately indifferent to the need.  <u>Natale</u>, 318 F.3d at 584-85.

For a pretrial detainee to establish a violation of his constitutional right to adequate medical care, "evidence must show (i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need."  <u>Id.</u> at 582.  Deliberate indifference is a subjective standard that requires proof that a municipal actor "knows of and disregards an excessive risk to inmate health or safety."  <u>Id.</u>  (quoting <u>Farmer v. Brennan</u>, 511 U.S. 825, 837 (1994)).

Plaintiff's case revolves around his theories that Defendants' policies, or lack thereof, caused Plaintiff to (1) not receive insulin in a timely manner; (2) not receive special meals for diabetics in a timely manner; and (3) suffer injuries due to failed attempts to insert an intravenous line into Plaintiff's arm.

### B. Provision of Insulin to Diabetics

1. <u>Delay in Receiving Insulin</u>

Plaintiff asserts that Defendants' policies, or lack thereof, resulted in an at least eighteen-hour delay in Plaintiff receiving necessary insulin. Defendant ACHS asserts that Plaintiff received insulin in a timely manner. According to Defendant ACHS, Plaintiff therefore received adequate medical care and Defendant ACHS could not have acted with deliberate indifference, regardless of what policies were or were not in place for treatment of diabetics.[1] See ACHS Br. 5-9 (Doc. 70).

Defendant ACHS asserts that Plaintiff received insulin at ACJ beginning on March 10, 2009, the day Plaintiff entered ACJ. Plaintiff asserts that he did not get insulin until March 11, 2009. Defendant ACHS notes that Plaintiff testified that, while he was in intake, he was seen by an ACHS nurse, who tested Plaintiff's blood sugar and administered insulin. ACHS Br. 6 (Doc. 70). Defendant ACHS, however, fails to note that Plaintiff testified that this happened at least eighteen hours after he arrived at ACJ. Dietz Dep. 52:6-52:21 (Doc. 71-1).

Defendant ACHS also relies on ACHS medical records (Doc. 71-5) in support of its assertion that Plaintiff began receiving insulin on March 10, 2009. See ACHS Br. 7 (Doc. 70); ACHS Facts ¶¶ 37-38 (Doc. 71). Defendant ACHS, however, has not provided any evidence

---

[1] In response to Plaintiff's statement of material facts, Defendant ACHS denied as immaterial all facts related to ACHS nursing protocols for diabetics. See ACHS Response to Pl.'s Facts ¶¶ 37-44 (Doc. 84). According to ACHS: "Whatever the nursing protocols were at that time, however difficult it was to secure the services of a physician in person, the difficulty of securing a physician to prescribe a diet and similar matters are not relevant to whether or not *a constitutional tort* took place. However difficult it may be to secure a doctor's orders, **they were secured because insulin was administered**." Id. Defendant ACHS later confirmed that the ACHS Nursing Protocols (Doc. 64-4) referenced by Plaintiff were in place during Plaintiff's stay at ACJ. See ACHS Supp. Br. 1 (Doc. 89).

interpreting the various documents included in the medical records.[2] In light of Plaintiff's testimony, and the lack of evidence interpreting the medical records, a genuine dispute of material fact exists as to when Plaintiff began receiving insulin.

    2.    <u>Defendants' Alleged Lack of Policies Regarding Administration of Insulin</u>

Accepting for purposes of summary judgment Plaintiff's assertion that he was deprived on insulin for at least eighteen hours, such a deprivation could be the basis of a § 1983 claim for a violation of substantive due process rights. See <u>Natale v. Camden Cnty. Correctional Facility</u>, 318 F.3d 575, 578, 582 (3d Cir. 2003) (finding that reasonable jury could find substantive due process violation where prison healthcare provider ignored inmate's need for insulin and inmate was deprived of insulin for twenty-one hours). Because Defendant Rustin may be liable only in his role as final policymaker, <u>see</u> Memorandum & Order on Motion to Dismiss 6 (Doc. 44), and there are no other individual defendants remaining in this case, Plaintiff must demonstrate that the deprivation of insulin was caused by Defendants' policies or customs. See <u>Natale</u>, 318 F.3d at 583-84.

Plaintiff first asserts that Defendants violated his due process rights by failing to implement policies allowing inmates to use insulin pumps. Plaintiff admits that his diabetes "could be treated by injections or by the use of an insulin pump," and that there is no evidence "of a medical benefit of using an insulin pump over injections." ACHS Facts ¶ 24 (Doc. 70); Pl.s' Respone to ACHS Facts ¶ 24 (Doc. 75). Because diabetes treatment does not require an insulin pump, a failure to implement a policy allowing inmates to use insulin pumps could not

---

[2]    The medical records also have not been authenticated, but Plaintiff does not object to the authenticity of the records. Defendant ACHS submitted the entire transcript of the deposition of Dr. Lucille Aiken, who testified regarding some of the medical records. Defendant ACHS, however, has not cited to Dr. Aiken's testimony in support of its assertion that Plaintiff began receiving insulin on March 10. In any event, Dr. Aiken testified that she was unfamiliar with the forms upon which Defendant ACHS relies for its assertion that Plaintiff received insulin on March 10, 2009. See Aiken Dep. 36-47 (Doc. 71-2).

have created "an excessive risk to inmate health or safety." Natale, 318 F.3d at 582. Defendants are entitled to summary judgment with respect to Plaintiff's claim based on a failure to implement such a policy.

Plaintiff next asserts that his delay in receiving insulin was caused by Defendants' failure to implement any policies regarding the length of time new inmates spend in holding cells prior to formal admittance into ACJ, and the lack of a policy to inform inmates that the holding cells have a call box that inmates can use to speak with a correctional officer if medical attention is needed. Pl.'s Br. 11-13 (Doc. 76). It is undisputed that a new inmate arriving at ACJ undergoes an initial screening with ACHS medical professionals, and that ACHS must approve the inmate for admittance into ACJ before the inmate is placed in a holding cell to await formal processing into ACJ. Phillips Dep. 23:15-24:15 (Doc. 71-6); Hungerman Dep. 15:5-17:19 (Doc. 64-1 at 8-10); County Facts ¶¶ 18-21 (Doc. 66); Pl.'s Response to County Facts ¶¶ 18-21 (Doc. 75).

With respect to Defendants Allegheny County and Rustin, Plaintiff has provided no evidence to suggest that their policy of referring new inmates to ACHS for medical clearance by medical professionals, prior to admittance into ACJ, created "an excessive risk to inmate health or safety." Farmer, 511 U.S. at 837. Defendants Allegheny County and Rustin, therefore, are entitled to summary judgment on Plaintiff's claim based on deprivation of insulin. See Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir. 2004) (holding that "absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference).

With respect to Defendant ACHS, Plaintiff similarly has not provided any evidence to suggest that Defendant ACHS's initial medical screening policies created "an excessive risk to

inmate health or safety," Farmer, 511 U.S. at 837, resulting in Plaintiff's deprivation of insulin for at least eighteen hours. Plaintiff relies on Natale, arguing that Natale is "highly similar" to this case. Pl.'s Br. 4 (Doc. 76). In Natale, the plaintiff underwent an initial medical screening upon entry into a prison. 318 F.3d at 578. Medical staff noted that the plaintiff was an insulin-dependent diabetic, but never asked the plaintiff how often he needed insulin before admitting him to the general prison population. Id. The plaintiff received his first dose of insulin twenty-one hours after he was admitted to the prison. Id. Two days later, the plaintiff suffered a stroke, which he attributed to the prison health provider's failure to administer insulin for twenty-one hours. Id. One of the defendant's employees testified that the defendant health care provider's policy "was that a doctor would see inmates within 72 hours, but that there was no practice in place to accommodate inmates with more immediate medication needs." Id. at 583. The court found that the plaintiff presented sufficient evidence to survive summary judgment on a § 1983 claim alleging a substantive due process violation.

Unlike the plaintiff in Natale, Plaintiff here has presented no evidence to indicate a lack of policy to accommodate inmates with immediate medication needs. In contrast to the defendant in Natale, Defendant ACHS had Nursing Protocols specifically addressing the needs of diabetic inmates (Doc 64-4), and ACHS Chief Operating Officer Dana Phillips testified that diabetic inmates' immediate insulin needs could be accommodated prior to the inmate seeing a doctor.[3] Similar to the medical screening policy in Natale, ACHS's protocols did not require new diabetic inmates to immediately see a doctor and only required an appointment with "the

---

[3] Phillips was unsure if the ACHS Nursing Protocols (Doc. 64-4) of record in this case were in place in 2009, when the events giving rise to this lawsuit arose. The parties apparently agree that those protocols were in place in 2009, as both Plaintiff and Defendant ACHS rely on those protocols in their briefing. See Pl.'s Br. 13-14 (Doc. 76); ACHS Supp. Br. 1, 3 (Doc. 89).

physician or practitioner within 2 days of entering the facility." ACHS Nursing Protocols ¶ E.2 (Doc. 64-4 at 3). Unlike the defendant's employee in Natale, however, Phillips explained that it would be mandatory for ACHS staff to call a physician to order insulin for any insulin-dependent diabetic. Phillips Dep. at 55:9-56:5 (Doc. 71-6); see also id. at 49:10-50:7 (explaining that, while patient may not see doctor for two days, ACHS staff "can call the doctor 24/7"). Consistent with Phillips' testimony, the ACHS Nursing Protocols for diabetic inmates instruct ACHS staff to "[c]onfirm medications and dosages and notify physician or practitioner for medication and diet orders." ACHS Nursing Protocols ¶ E.3 (Doc. 64-4 at 3).

Plaintiff's assertion that he did not receive insulin for at least eighteen hours might suggest that ACHS staff was negligent or failed to follow ACHS policy, but negligence or a failure to follow policy are insufficient to impose liability on Defendant ACHS. See Rago v. City of Pittsburgh, 429 F. App'x 86, 89 (3d Cir. 2011) (affirming summary judgment in favor of defendant municipality in § 1983 action where plaintiff "produced no evidence that anything other than a one-time failure to follow municipal policy occurred"); Talbert v. Kelly, 799 F.2d 62, 67 (3d Cir. 1986) (explaining that in § 1983 actions against governmental agency, "the carelessness of an employee in failing to follow a policy . . . may establish the negligence of the employee but does not fasten liability on the governmental agency." (quoting Kranson v. Valley Crest Nursing Home, 755 F.2d 46, 51 (3d Cir. 1985))). Plaintiff has produced no evidence suggesting an inadequacy in Defendant ACHS's policy for initial medical screening of diabetic inmates, and Defendant ACHS is entitled to summary judgment on Plaintiff's claim related to his alleged deprivation of insulin.

### C. Provision of Special Meals for Diabetics

Plaintiff also asserts that Defendants violated his substantive due process rights by failing to enact policies to ensure provision of special meals for diabetic inmates. The evidence of

record indicates that special meals were not ordered for Plaintiff until March 12, 2009 – two days after he was admitted to ACJ. Plaintiff asserts that he did not timely receive special meals for diabetics due to ACHS's allegedly deficient Nursing Protocols that permitted the possibility that a new, diabetic inmate would not see a doctor for up to two days. Pl.'s Br. 13-14 (Doc. 76). The Nursing Protocols, however, instruct ACHS staff to "[c]onfirm medications and dosages and notify physician or practitioner for medication and diet orders." ACHS Nursing Protocols ¶ E.3 (Doc. 64-4 at 3). Consistent with the Nursing Protocols, both Phillips and Dr. Lucille Aiken, an ACHS endocrinologist, testified that a physician could prescribe special meals for diabetics by telephone. Phillips Dep. 53:9-53:15 (Doc. 71-6); Aiken Dep. 24:17-25:2 (Doc. 72). Aiken also testified that, when a new inmate is admitted to ACJ, ACHS nurses would "automatically know . . . that a diabetic diet is part of the picture." Aiken Dep. 23:18-24:2 (Doc. 72).

Because a diabetic inmate did not need to see a doctor in person in order to get special meals, the policy permitting the possibility that a new inmate would not see a doctor in person for up to two days, by itself, could not have caused the delay in Plaintiff receiving special meals for diabetics. While the summary judgment record does not appear to contain any evidence explaining Defendant ACHS's two-day delay in ordering special meals for Plaintiff, the record also contains no evidence that the delay resulted from an ACHS policy or custom. Defendant ACHS, therefore, is entitled to summary judgment on Plaintiff's claim regarding a medically-inadequate diet.[4] See Rago, 429 F. App'x at 89 (explaining that demonstrating a one-time failure

---

[4] The arguments presented in Defendant ACHS's brief warrant little attention. Defendant ACHS asserts that (1) it is not responsible for providing meals; and (2) it ordered special meals for Plaintiff on March 12, 2009. ACHS Br. 9-10 (Doc. 70). Although ACHS does not provide meals for inmates, ACHS admits that the only way for an inmate to get special meals tailored for diabetics is for ACHS to order them. Defendant ACHS, therefore, cannot shirk responsibility for the failure to provide special meals to Plaintiff by asserting that "it does not cook meals for inmates." ACHS Br. 9 (Doc. 70). Defendant ACHS's simplistic argument

11

to follow policy is insufficient to create municipal liability in § 1983 action); Talbert, 799 F.2d at 67 (explaining that employee's failure to follow policy does not create liability for governmental agency in § 1983 action).

Plaintiff has not presented any theory of how a policy or custom of Defendant Allegheny County could have caused his alleged deprivation of special meals. See Pl.'s Br. 13-14 (Doc. 76). Defendants Allegheny County and Rustin, therefore, also are entitled to summary judgment on this claim.

### D. Policies Regarding Proper IV Techniques

Plaintiff also asserts that Defendant ACHS violated Plaintiff's substantive due process rights by failing to implement policies preventing novice medical personnel from learning proper IV techniques by practicing on inmates in emergency situations. Defendant ACHS asserts that Plaintiff has no evidence to support this claim. Plaintiff did not respond to Defendant ACHS's assertion. Plaintiff, therefore, apparently concedes a lack of evidence to support this claim. Summary judgment is entered in favor of Defendant ACHS on this claim.

### CONCLUSION

For all of the reasons stated above, Defendants County of Allegheny and Ramon C. Rustin's Motion for Summary Judgment (Doc. 64) is granted, and Defendant Allegheny Correctional Health Services, Inc.'s Motion for Summary Judgment (Doc. 68) is granted.

---

that it cannot be liable because it ordered special meals for Plaintiff on March 12, 2009 fails because Plaintiff entered ACJ on March 10, 2009. Defendant ACHS provides no explanation for why special meals were not ordered earlier.

## II. ORDER

For the reasons stated above, the Court hereby **ORDERS** that Defendants County of Allegheny and Ramon C. Rustin's Motion for Summary Judgment (Doc. 64) is **GRANTED**, and Defendant Allegheny Correctional Health Services, Inc.'s Motion for Summary Judgment (Doc. 68) is **GRANTED**.

**IT IS SO ORDERED**.

s/Cathy Bissoon
Cathy Bissoon
United States District Judge

August 13, 2012

cc (via e-mail):

All counsel of record.